***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. American Casualty Insurance Company is the carrier on the risk, with RSKCO as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury by accident on May 1, 2002.
5. Defendants admit plaintiff incurred a compensable lumbar strain but contest all other disability and causation regarding plaintiff's back, foot, and knee.
6. Plaintiff's average weekly wage is $412.00, yielding a compensation rate of $276.00.
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty years old. She has a tenth grade education and trained to become a certified nursing assistant. Plaintiff commenced work for defendant-employer as a certified nursing aide on August 18, 2001.
2. On May 1, 2002, plaintiff suffered an admittedly compensable injury by accident to her back when she sat down in a chair at the home of a patient, Mr. Roberts. The chair collapsed and plaintiff fell to the floor.
3. On May 1, 2002, Dr. John Piland at the Hart Industrial Clinic treated plaintiff and diagnosed a right hip contusion.
4. Plaintiff returned to Hart Industrial Clinic on May 3, 2002, where Dr. Robert W. Hart, III, a family practitioner, diagnosed plaintiff with a back strain and restricted her to limited bending, twisting and no lifting over 25 pounds. Dr. Hart also prescribed Percocet for pain.
5. On May 8, 2002, plaintiff again returned to Hart Industrial Clinic. Ms. Myrick, a family nurse practitioner, diagnosed a low back strain, continued the work restrictions, and recommended physical therapy.
6. On May 21, 2002, Dr. Hart released plaintiff to return to full duty work. Thereafter, plaintiff returned to her job with defendant-employer caring for Mr. Roberts, but she began experiencing increasing symptoms of pain.
7. On May 29, 2002, plaintiff was seen by Dr. Robert Kukla, a board certified podiatrist, who noted pain and swelling in plaintiff's foot and scheduled a bone scan.
8. Based on the bone scan, Dr. Kukla diagnosed plaintiff with a stress fracture in her right foot. In his deposition testimony, Dr. Kukla testified that plaintiff's fracture to her foot most likely occurred as a result of her May 1, 2002, work-related accident. On June 17, 2002, Dr. Kukla placed plaintiff in a surgical shoe and prescribed minimal weight bearing. On July 1, 2002, Dr. Kukla placed plaintiff in an immobilizer cast boot and in a plaster cast on August 16, 2002.
9. Dr. Kukla testified that plaintiff has reached maximum medical improvement for her foot condition, unless she were to have surgery, which Dr. Kukla was not recommending at that time.
10. At the hearing before the Deputy Commissioner, plaintiff waived her claim to temporary total disability benefits before July 1, 2002.
11. On or about July 1, 2002, plaintiff's job was terminated for reasons unrelated to her workers' compensation claim.
12. On September 17, 2002, plaintiff presented to Dr. dePerczel, an orthopedic surgeon at Carolina Orthopedic Specialists, complaining of right knee pain and back pain. In his deposition on April 5, 2004, Dr. dePerczel testified that plaintiff's injury on May 1, 2002, is consistent with an injury to the right knee, which could result in cartilage damage to the undersurface of the kneecap and to the medial meniscus. On October 29, 2002, Dr. DePerczel prescribed a walker for plaintiff.
13. On December 12, 2002, plaintiff presented to Dr. Herbert J. Schulten, an orthopedic specialist and partner of Dr. dePerczel. In his deposition testimony, Dr. Schulten opined that plaintiff may have suffered a muscle strain at the time of the fall and that as the strain improved, plaintiff's attention shifted toward her knee, as it was mechanically deranged because of torn cartilage. Further, Dr. Schulten explained that a knee derangement could affect one's back by placing additional stress on it.
14. On January 16, 2003, Dr. dePerczel performed arthroscopic right knee surgery. As a result of her knee surgery, plaintiff was temporarily totally disabled from January 16, 2003, until approximately July 16, 2003.
15. On July 30, 2003, Dr. Kukla wrote a letter recommending that plaintiff "limit her activities as much as possible to a sedentary position." Dr. Kukla neither stated in his letter that this restriction was permanent nor was he asked in his deposition.
16. Dr. dePerczel opined that plaintiff's May 1, 2002, injury and the treatment of the knee and ankle problems aggravated her underlying back condition and as a result, on October 13, 2003, Dr. dePerczel performed back surgery on plaintiff, consisting of a decompression at L4-5 and L5-S1 to alleviate plaintiff's spinal stenosis and bilateral lumbar radiculitis.
17. Dr. dePerczel further opined that as a result of plaintiff's back surgery, "I've kept her out of work. In fact, I do have a note indicating no work before April the 1st of this year." Dr. dePerczel further stated in his June 17, 2005, "Patient Work Status Report," that plaintiff is unable to return to work from September 17, 2002, through the present.
18. In a similar report dated July 19, 2005, Dr. dePerczel indicated that plaintiff would indefinitely be out of work due to her injury. In his deposition testimony on September 7, 2005, Dr. dePerczel clarified that the date he indicated plaintiff was unable to return to work indefinitely was July 19, 2005, although it may have appeared to be written as 2002. Dr. dePerczel testified that he was not treating plaintiff in 2002.
19. Dr. dePreczel stated that plaintiff had been taking pain medicine on a long-term basis. He has prescribed Darvocet, Percocet and Vicodin on a rotating basis. At plaintiff's July 19, 2005, visit with Dr. dePerczel, he again prescribed Percocet, Darvocet and Ambien to help plaintiff sleep.
20. In her deposition testimony on August 2, 2005, plaintiff testified that since the hearing before the deputy commissioner, she has tried to find work within her physical limitations of no lifting, bending and limited walking, but was without success. She testified that she is basically immobile and is taking medication for pain, depression, anxiety, and to help her sleep.
21. Although Dr. dePerczel opined that plaintiff has been unable to return to work since her back surgery on October 13, 2003, when told that plaintiff had attempted to secure employment within her physical limitations, he opined that if plaintiff felt she could find and perform such work, she could attempt it. However, it was his opinion that she was not capable of performing a full-time job due to her physical limitations and the narcotics she is taking on a chronic basis.
22. The Full Commission finds that plaintiff's injury to her back arose out of and in the course of her employment and is the direct result of a specific traumatic incident of the work assigned on May 1, 2002.
23. The Full Commission further finds that plaintiff's injury to her right knee and foot arose out of and in the course of her employment with defendants on May 1, 2002.
24. Based upon the greater weight of the competent evidence of record, the Full Commission finds that the combination of plaintiff's pain, physical work limitations and the effects of her medications due to her injuries by accident to her back, right knee and right foot have prevented plaintiff from obtaining and maintaining employment. Accordingly, the Full Commission finds that as a result of her compensable injuries to her back, right knee and right foot on May 1, 2002, plaintiff is entitled to ongoing total disability compensation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff, on May 1, 2002, plaintiff sustained an injury by accident as a result of a specific traumatic incident arising out of and in the course of her employment, which resulted in injury to her right foot and right knee and back. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injuries to her back, knee and foot, plaintiff was unable to earn wages in the same or any other employment and consequently, is entitled to temporary total disability compensation at the rate of $276.00 from January 16, 2003, through July 16, 2003, and from October 13, 2003, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. The issue of any permanent partial disability shall be held open for determination at a later date. N.C. Gen. Stat. § 97-30.
4. As a result of plaintiff's compensable injuries by accident, plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for temporary total disability at the rate of $276.00 per week for the period from January 16, 2003, through July 16, 2003, and from October 13, 2003, and continuing until further Order of the Industrial Commission. Compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay for plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's compensable injuries on May 1, 2002, as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including past and future medical treatment for plaintiff's compensable right foot, right knee and back condition.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the lump sum compensation awarded to plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from that amount and payable directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be payable directly to plaintiff's counsel.
4. Defendants shall pay all costs.
This the ___ day of October 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER